IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHARLES KENZELL CARTER,** )<br>    Plaintiff, ) | Case No. 7:21-cv-00484 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **WARDEN RICK WHITE, et al.,** ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Charles Kenzell Carter, proceeding pro se and in forma pauperis, is a Wyoming inmate housed within the Virginia Department of Corrections ("VDOC") pursuant to an Interstate Corrections Compact contract between Virginia and Wyoming. On September 16, 2021, Carter filed this action under 42 U.S.C. § 1983 against the VDOC and fourteen VDOC employees (collectively, the VDOC Defendants),[1] asserting violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of state law. The VDOC Defendants have filed a motion to dismiss to which Carter has responded. ECF Nos. 16 and 21. For the reasons set forth below, the motion is **GRANTED** as to Carter's claims under 42 U.S.C. § 1983, and the court declines to exercise supplemental jurisdiction over his state law claims.

---

[1] The VDOC employees are as follows: Warden Rick White, Regional Administrator Carl Manis, Hearing Officer K.D. Ramey, Hearing Officer J. Adams, Lt. M.J. Williams, Lt. M.D. Mullins, Sgt. A. Bentley, VDOC Director Harold Clarke, Kyle Rosch, P. Sykes, J. Beverly, Counselor M. A. Martin, K. Almarodle, and T. Fletcher. Compl., ECF No. 1, at 1. In addition to these individuals, Carter names "Kitchen Inmate Workers" in the caption of his complaint. Id. The "Kitchen Inmate Workers" have not been identified or served with process.

## I. Background

Carter is incarcerated at Red Onion State Prison in Wise County, Virginia. His complaint stems from four incidents that occurred at that facility in 2021. The court will summarize each incident and the corresponding federal claims in turn.

### A. Disciplinary Offense 111A

Carter alleges that Sgt. A. Bentley charged him with intentionally destroying state property (Disciplinary Offense 111A) on June 3, 2021. Compl., ECF No. 1, at 3. Carter claims that the disciplinary charge was false and that he was convicted of the charge and fined $15.00 without receiving due process. Id. at 4–14. In particular, Carter asserts that Lt. M.D. Mullins failed to properly investigate the charge; that Hearing Officer K.D. Ramey failed to provide requested evidence and improperly conducted the disciplinary hearing in Carter's absence; that Ramey and Hearing Officer J. Adams failed to provide correct appeal forms; and that Warden Rick White improperly denied his appeal. Id. Carter also claims that various defendants violated his right to due process by applying Virginia, rather than Wyoming, disciplinary rules and procedures. Id.

### B. Disciplinary Offense 124

On June 3, 2021, Carter received an additional charge of throwing bodily fluids (Disciplinary Offense 124). Id. at 7. Carter claims that he was convicted of the charge and fined $10.00 without receiving due process. Id. Once again, Carter alleges that prison officials unlawfully applied Virginia disciplinary rules and procedures. Id. Carter also alleges that Ramey failed to give him an appeal packet in a timely manner and that White denied his appeal without acknowledging the alleged due process violations. Id. at 7–8.

### C.  Meal Tray Issues

Carter alleges that K. Almarodle and unknown "Kitchen Inmate Workers" did not properly clean the trays that were used to serve his meals. Id. at 14. On the morning of July 4, 2021, Carter received his common fare tray and discovered a spider under his oatmeal.[2] Id. at 9. As a result, Carter "was forced to eat off a regular tray." Id. He filed an informal complaint and a grievance regarding the incident, both of which were rejected by Almarodle, and his appeal was denied by Regional Administrator Carl Manis. Id. Carter claims that Almarodle and the unknown kitchen staff members violated his rights under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. Id. at 14.

### D.  Disciplinary Offense 100/198

On July 7, 2021, Carter received a disciplinary charge for "aiding and abetting to commit murder" (Disciplinary Offense 100/198). Id. at 10. Carter alleges that Lt. M.J. Williams "processed the charge" and that the subsequent conviction resulted in the "los[s] of all good time." Id. at 10, 13. Carter also alleges that he was placed in long-term segregation as a result of "these unlawful disciplinary infractions" and that J. Beverly removed him from school. Id. at 11. Carter further alleges that he "know[s] that [Beverly] is just retaliating" against him for "exercising [his] constitutional and legal rights." Id. Based on these allegations, Carter asserts violations of his rights under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. Id. at 11–19.

---

[2] The complaint does not contain any specific allegations pertaining to Carter's placement on the common fare diet. In previous cases, VDOC officials have explained that the common fare diet is designed to meet religious dietary restrictions. See, e.g., Dellinger v. Clarke, 172 F. Supp. 3d 898, 900 (W.D. Va. 2016).

## II. Standard of Review

The VDOC Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## III. Discussion

### A. Claims under § 1983

Carter filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured

4

by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017).

1. **Due Process Claims**

The court will begin by addressing Carter's claims for alleged violations of his right to due process. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). A plaintiff who fails to establish the existence of a protected interest "cannot invoke the procedural protections of the Due Process Clause." Id. (emphasis and internal quotation marks omitted); see also Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.") (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579 (1972)).

a. **Disciplinary-Related Claims**

Carter asserts multiple due process violations related to his three disciplinary convictions. He specifically alleges that he was deprived of liberty interests without due process. See, e.g., Compl. at 6 ("I have a liberty interest in disciplinary infractions . . . ."); id. at

5

13, 15 (challenging alleged deprivations of his "Breach of Compact Liberty Interest," "False Charges Liberty Interest," and "Denial of School Programming Liberty Interest").

In Wolff v. McDonnell, 418 U.S. 539 (1974), "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits . . . ." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff, 418 U.S. at 555). The Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest must receive: (1) advance written notice of the charges against him; (2) an opportunity to call witnesses and present evidence unless doing so would be unduly hazardous to institutional safety or correctional goals; (3) a written statement describing the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. Wolff, 418 U.S. at 563-71.

The procedural protections outlined in Wolff apply only when a disciplinary sanction implicates a constitutionally protected interest. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless it inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." Sandin, 515 U.S. at 484, 487; see also Landor v. Lamartiniere, 515 F. App'x 257, 259 (5th Cir. 2013) ("To the extent Landor is arguing that defendants violated his right to due process by filing false disciplinary charges against him, he has not demonstrated that the punishments he received . . . 'impose [] atypical and significant hardship[s] . . . in relation to ordinary incidents of prison life.' Thus, he has failed to show that these punishments implicated a liberty interest

that required due process.") (quoting Sandin, 515 U.S. at 484); McNeill v. Currie, 84 F. App'x 276, 277 (4th Cir. 2003) ("We conclude that McNeill was not entitled to due process protections with respect to his disciplinary hearings . . . , because the disciplinary actions taken and McNeill's placement in administrative segregation did not create an atypical or significant hardship in relation to the ordinary incidents of prison life.").

Here, Carter argues that the Interstate Corrections Compact enacted by Wyoming and the implementing contract between Wyoming and Virginia give rise to a liberty interest in having Wyoming's prison disciplinary rules and regulations applied to him while he is incarcerated in Virginia. Carter also contends that the imposition of disciplinary fines, the elimination of good-time credits, his placement in segregation, and his expulsion from a prison school program implicate a liberty interest protected by the Due Process Clause. Having considered the complaint and the parties' arguments in light of applicable case law, the court agrees with the defendants that Carter has not pled sufficient facts to state a due process claim under § 1983.

First, Carter has not plausibly alleged that he has any "fourteenth amendment liberty interest entitling him to the application of [Wyoming] disciplinary rules to his disciplinary proceedings in [Virginia]." Stewart v. McManus, 924 F.2d 138, 141 (8th Cir. 1991). As other courts have explained, the application of a state's disciplinary rules and procedures to out-of-state inmates incarcerated in that state typically "does not impose an 'atypical or significant' hardship on such prisoners." Garcia v. Lemaster, 439 F.3d 1215, 1219 (10th Cir. 2006); see also Ghana v. Pearce, 159 F.3d 1206, 1209 (9th Cir. 1998) (holding that "application of [Oregon] procedures by Oregon prison officials instead of New Jersey procedures does not

7

impose an 'atypical and significant hardship'"). And in the absence of an atypical and significant hardship, an Interstate Corrections Compact "does not create a liberty interest protected by the Fourteenth Amendment." Ghana, 159 F.3d at 1209; see also Garcia v. Schwarzenegger, 327 F. App'x 689, 691 (9th Cir. 2009) ("The district court properly granted summary judgment on Garcia's claim that the [Western Interstate Corrections Compact] creates a Fourteenth Amendment liberty interest, because the application of California law to his classification proceedings does not impose an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.") (internal quotation marks and citation omitted); Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996) (concluding that the application of certain state regulations applicable to interstate transfers did not implicate a liberty interest since they did not "impose 'atypical and significant hardship on the inmate' as defined in the Sandin decision"); Baltas v. Maiga, No. 3:20-cv-01177, 2020 U.S. Dist. LEXIS 198290 at *30 (D. Conn. Oct. 26, 2020) (concluding that the Interstate Corrections Compact under which the plaintiff was transferred to Virginia "does not confer a liberty interest for purposes of a Section 1983 claim").

Second, the monetary penalties imposed for Disciplinary Offenses 111A and 124 did not implicate a liberty interest requiring due process safeguards. According to the complaint, the penalty for the first offense was a $15 fine, and the penalty for the second offense was a fine of $10.00. "As several judges of this court have recognized, small monetary penalties . . . do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." Johnson v. Adams, No. 7:22-cv-00341, 2022 U.S. Dist. LEXIS 129587, at *5 (W.D.

Va. July 21, 2022) (internal quotation marks and citations omitted); see also Riddick v. Gilbert, No. 7:20-cv-00598, 2021 U.S. Dist. LEXIS 143938, at *6 (W.D. Va. Aug. 2, 2021) ("As this court has acknowledged on many occasions, small fines levied against a Virginia state prisoner do not impose [an atypical and significant] hardship and therefore do not implicate the Due Process Clause.") (collecting cases); Graham v. Stallard, No. 7:17-cv-00035, 2020 U.S. Dist. LEXIS 177366, at *53 (W.D. Va. Sept. 28, 2020) ("The $10 monetary fines imposed here were insufficient to trigger constitutional due process protections."); Joyner v. Fleming, No. 7:16-cv-00486, 2018 U.S. Dist. LEXIS 77120, at *7 (W.D. Va. May 8, 2018) ("Neither Plaintiff's stay in segregation for approximately six months nor the $12.00 fine implicates interests protected by the Due Process Clause."). Consistent with these decisions, the court concludes that the small fines imposed for Carter's disciplinary infractions do not constitute an atypical and significant hardship and therefore do not implicate the protections afforded under the Due Process Clause.

Third, the denial of access to educational programs generally does not deprive an inmate of a protected liberty interest. See Higgason v. Farley, 83 F.3d 807, 809 (7th Cir. 1996) (holding that the denial of educational programs "did not infringe on a protected liberty interest"); Arango v. Winstead, 352 F. App'x 664, 666 (3d Cir. 2009) (explaining that an inmate's removal from a prison program did not implicate a protected liberty interest since "restriction from participation in prison programs is among the conditions of confinement that an inmate may reasonably anticipate during her incarceration"); Scott v. Mathena, No. 7:12-cv-00469, 2012 U.S. Dist. LEXIS 147682, at *3 (W.D. Va. Oct. 15, 2012) (concluding, based upon the facts alleged, that the plaintiff's inability to participate in prison programs did

not give rise to the protections of the Due Process Clause). Here, as in the foregoing cases, Carter does not plausibly allege that he was deprived of a protected liberty interest as a result of being removed from a prison school program.

Fourth, Carter does not plausibly allege that his placement in segregation implicates a protected liberty interest. Carter claims that he was placed in segregation as a result of the "unlawful disciplinary infractions" described in the complaint. Compl. at 11. Carter executed his complaint on September 13, 2021, id. at 24, less than four months after he was charged with the first infraction. He does not claim that he will be held in segregated confinement indefinitely or offer any facts indicating that his conditions of confinement in segregation "impose an atypical and significant hardship within the correctional context." Wilkinson v. Austin, 545 U.S. 209, 224 (2005); see also Smith v. Collins, 964 F.3d 266, 275 (4th Cir. 2020) ("Drawing on the Supreme Court's reasoning in Wilkinson, this Court has construed the atypical-and-significant hardship analysis as turning on primarily three factors: (1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence.") (internal quotation marks and citations omitted). Therefore, as currently pled, Carter's complaint does not state a viable due process claim related to his placement in segregation.

Finally, while the loss of good time credits may implicate a protected liberty interest, Carter's due process challenges to the disciplinary conviction resulting in the loss of credits are not cognizable under § 1983. As the Fourth Circuit recently observed, "[i]t has long been settled law . . . that a plaintiff may not challenge the validity of a disciplinary conviction

[resulting in the loss of good time credits] through a damages suit under § 1983 . . . 'unless the plaintiff can demonstrate that the conviction . . . already has been invalidated.'" Moskos v. Hardee, 24 F. 4th 289, 295 (4th Cir. 2022) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)); see also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (concluding that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under §1983"). Here, as in Moskos and Balisok, Carter's due process claims "necessarily imply the invalidity of the punishment imposed," and he does not allege that the disciplinary conviction resulting in the loss of good time credits has been invalidated. Moskos, 24 F.4th at 296 (quoting Balisok, 520 U.S. at 649). Consequently, his due process challenges to that conviction "must be dismissed under Balisok." Id.

### b. Meal-Related Claims

Carter also asserts due process claims related to the mishandling of meal trays. He alleges that the trays were not adequately cleaned and that he was forced to accept a regular meal tray on one occasion after he found a spider in his common fare meal. See Compl. at 14 (asserting that these alleged actions violated his "14th Amendment rights").

As indicated above, inmates have a liberty interest in freedom from conditions of confinement that impose "atypical and significant hardship" relative to "ordinary incidents of prison life." Sandin, 515 U.S. at 484. The court agrees with the defendants that the existing allegations regarding the mishandling of meal trays do not rise to this level. See, e.g., Sanchez v. Allen, 611 F. App'x 792, 795 (5th Cir. 2015) (holding that an inmate's "placement on the food-loaf diet for seven days" did not implicate a liberty interest under Sandin); Cox v.

11

Benedetti, 114 F. App'x 939 (9th Cir. 2004) (affirming the district court's decision that an inmate's "conclusory assertions were insufficient to show that removing him from the alternative meal list imposed an 'atypical and significant' deprivation in relation to ordinary incidents of prison life") (quoting Sandin, 515 U.S. at 484).

For these reasons, the court concludes that Carter's complaint, as currently pled, does not state a viable due process claim under § 1983. Consequently, the VDOC Defendants' motion to dismiss will be granted as to these claims. Because the due process claims against the unknown kitchen workers are subject to dismissal for the same reason, the court will dismiss the claims against them under 28 U.S.C. § 1915(e)(2)(b). See 28 U.S.C. § 1915(e)(2)(B) (providing that a complaint filed in forma pauperis shall be dismissed if it "fails to state a claim upon which relief may be granted").

### 2. Eighth Amendment Claims

Carter also appears to allege that the disciplinary proceedings, the penalties imposed for his disciplinary convictions, and the mishandling of his meal trays violated his rights under the Eighth Amendment, which prohibits the imposition of cruel and unusual punishment. See U.S. Const. amend. VIII. The Supreme Court has interpreted this prohibition to require prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, the Eighth Amendment "applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019).

To state a prison conditions claim under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate (1) that "the deprivation alleged [was], objectively, sufficiently

12

serious," and (2) that "prison officials acted with deliberate indifference." Id. at 355, 361 (internal quotation marks and citations omitted). To satisfy the first requirement, a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the [plaintiff's] exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). To satisfy the second requirement, a plaintiff must allege facts sufficient to demonstrate that a correctional official actually knew of and disregarded an objectively serious condition, medical need, or risk of harm. Id. This is an "exacting standard," which is not met by "mere negligence." Jackson, 775 F.3d at 178.

Applying these principles, the court concludes that Carter's complaint fails to state a viable claim under the Eighth Amendment. With regard to the first requirement, the complaint does not contain enough factual allegations for the court to reasonably infer that Carter suffered a sufficiently serious deprivation. Although he broadly claims to have suffered "physical, mental and emotional injur[ies]" as a result of the defendants' actions, see, e.g., Compl. at 12, such vague and conclusory allegations are insufficient to satisfy the objective component. Additionally, Carter does not plausibly allege that any of the defendants actually knew of and disregarded a serious condition or risk of harm, as required to meet the subjective component. Therefore, the complaint, as currently drafted, fails to state a claim under the Eighth Amendment against any of the named defendants.

### 3. First Amendment Claims

Carter assert two claims under the First Amendment. The first claim is that Almarodle

and unknown kitchen workers violated his rights under the Free Exercise Clause by not properly cleaning meal trays and by serving him a common fare tray containing a spider, which left him "without a choice [other than] to take a regular tray." See Compl. at 14. The second claim is that Beverly expelled him from a school program in retaliation for exercising his constitutional rights. Id. at 11, 15. The court will address each claim in turn.

### a. Free Exercise

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018). "[A] substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (second alteration in original) (internal quotation marks and citation omitted).

The court agrees with the defendants that the factual allegations in the complaint are insufficient to state a claim for relief under the Free Exercise Clause. Carter does not identify any particular religious belief, much less plausibly allege that he holds a sincere religious belief. Nor does Carter allege sufficient facts from which the court can reasonably infer that the defendants' actions or omissions substantially burdened his ability to practice his religion. Therefore, the complaint fails to state a free exercise claim against any of the named defendants.

### b. Retaliation

Carter's final federal claim is that Beverly expelled him from a school program in retaliation for exercising his constitutional rights. Claims of retaliation by inmates are generally treated with skepticism "because 'every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Inmates "who claim their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [dismissal]." Adams, 40 F.3d at 74. In order to state a colorable retaliation claim under § 1983, an inmate must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

Carter's complaint, as currently drafted, fails to state a claim for retaliation. Although Carter refers to "another civil action," Compl. at 11, he does not allege that he previously filed suit against Beverly or set forth any other facts that would establish a causal connection between a previous lawsuit and his expulsion from school. Carter's conclusory assertion that he "know[s] that she is just retaliating against [him]" is insufficient to survive dismissal. See Adams, 40 F.3d at 74–75 (affirming the dismissal of a retaliation claim where the plaintiff's complaint "failed to contain any factual allegations tending to support his bare assertion [of retaliation]") (internal quotation marks and citation omitted). Because the allegations in the complaint do not allow the court to reasonably infer that there was a causal connection

15

between any protected activity and Carter's expulsion, the retaliation claim against Beverly must be dismissed.

####    4.    Summary

For these reasons, the court concludes that Carter's complaint fails to state a constitutional deprivation actionable under § 1983 against any of the named defendants. Therefore, the § 1983 claims are subject to dismissal under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii). Because it may be possible for Carter to allege additional facts to cure some of the deficiencies identified above, the court will dismiss the § 1983 claims without prejudice and permit Carter to file an amended complaint.

###   B.    Claims under State Law

In light of the court's disposition of the federal claims, the court declines to exercise supplemental jurisdiction over Carter's state law claims at this time and will dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). If Carter elects to file an amended complaint under § 1983, he may reassert any claims under state law that he believes are supported by the factual allegations.

##   IV.    Conclusion

For the reasons set forth herein, the motion to dismiss filed by the VDOC Defendants, ECF No. 16, is **GRANTED** with respect to Carter's claims under § 1983, and the court **DISMISSES** the § 1983 claims against all of the named defendants without prejudice. The court **DISMISSES** the remaining claims under state law without prejudice pursuant to 28 U.S.C. § 1367(c)(3). In light of the court's rulings, Carter's motion for partial summary

judgment, ECF No. 29, and his motion to amend that motion, ECF No. 41, are **DISMISSED** without prejudice as moot.[3]

An appropriate order will be entered.

Entered: August 4, 2022

*Digitally signed by Michael F. Urbanski       Chief U.S. District Judge*
*Date: 2022.08.04 08:58:44 -04'00'*

Michael F. Urbanski
Chief United States District Judge

---

[3] To the extent that Carter has attempted to raise new claims or legal theories in his motion for summary judgment or any other filing, the court has declined to consider them at this stage of the proceedings. See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing . . . ."). If Carter elects to file an amended complaint, he may assert new claims that arose out of the conduct or occurrences described in the original pleading.