IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHARLES KENZELL CARTER,** | ) |
| Plaintiff, | ) Case No. 7:21-cv-00484 |
| | ) |
| v. | ) |
| | ) By: Michael F. Urbanski |
| **WARDEN RICK WHITE, et al.,** | ) Chief United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Charles Kenzell Carter, proceeding pro se and in forma pauperis, is a Wyoming inmate housed within the Virginia Department of Corrections ("VDOC") pursuant to an Interstate Corrections Compact contract between the Commonwealth of Virginia and the State of Wyoming. On September 8, 2022, Carter filed an amended complaint against ten defendants, asserting violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as violations of state law. Nine of the defendants—Warden Rick White, Regional Administrator Carl Manis, Hearing Officer K.D. Ramey, Hearing Officer J. Adams, Lt. M.J. Williams, Sgt. Bentley, Harold Clarke, Kyle Rosch, and the VDOC (collectively, the "VDOC defendants")—have filed a partial motion to dismiss to which Carter has responded. ECF Nos. 48 and 53. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, and the claims asserted against the tenth defendant, Correctional Officer P. Maggard, are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c).

## I. Background

Carter is incarcerated at Red Onion State Prison. His amended complaint stems from a series of incidents that occurred at that facility in 2021. The court will summarize each incident and the corresponding claims in turn.

### A. Placement in Ambulatory Restraints

Carter first alleges that on June 3, 2021, Sgt. Bentley intentionally placed him in ambulatory restraints that were so tight that he suffered "lasting pain and physical bruises" to his upper and lower extremities. Am. Compl., ECF No. 46, at 4. Carter also alleges that Bentley threw him into a cell where he was forced to urinate while lying on the floor. Id. at 4–5. When a supervisor instructed Bentley to reapply the leg restraints, Bentley claimed that he could not get the key to work. Id. at 5–6. Carter alleges that Bentley "left the shackles tight, forcing [him] to remain and endure physical pain and tightness of the restraints [as they] cut into [his] flesh." Id. at 6.

Based on these allegations, Carter claims that Bentley used excessive force and acted with deliberate indifference to a substantial risk of serious harm, in violation of the Eighth Amendment (Claims 1 and 2). Id. at 12–13. Carter also asserts a claim of negligence under Virginia law (Claim 7).

### B. Disciplinary Charges

Carter next alleges that Bentley charged him with intentionally destroying state property (Disciplinary Offense 111A) on June 4, 2021. Id. at 7. Carter asserts that Hearing Officer Ramey found him guilty of the charge and imposed a fine of $15.00. Bentley also charged Carter with spitting or throwing bodily fluids (Disciplinary Offense 124). Carter alleges that

he accepted a penalty offer of $10.00 for that offense, which was deducted from his spending account by Hearing Officer J. Adams. Id. at 9.

On July 17, 2021, Correctional Officer Maggard charged Carter with aiding and abetting to commit murder (Disciplinary Offense 100/198). Id. Carter alleges that Maggard "was unlawfully in possession of contraband (chewing tobacco)" at the time he issued the charge. Id. On July 17, 2021, Carter "accepted the penalty that was offered by [Lt.] M.J. Williams of loss of all special good time." Id. at 10.

Carter asserts a variety of claims based on the foregoing allegations. In Claim 3, Carter asserts that Ramey, Adams, and the VDOC violated the Due Process Clause of the Fourteenth Amendment and the Interstate Corrections Compact ("ICC") contract by imposing "a penalty that exceeds the amount allowed under Wyoming Disciplinary laws." Id. at 13. In Claim 4, Carter asserts that Ramey, Adams, and Williams violated the Fourteenth Amendment by imposing "a penalty of loss of all good time." Id. at 14. In Claim 5, Carter asserts that Ramey, Adams, and the VDOC violated the Fourteenth Amendment by deducting disciplinary fines from his spending account. Id. In Claim 6, Carter asserts that Maggard violated the Fourteenth Amendment by possessing chewing tobacco during the course of issuing a disciplinary charge against Carter. Id.

### C. Catch-All Claim

Carter's amended complaint also contains a catch-all claim. In Claim 8, Carter seeks to recover for "[a]ny and all claims, causes, and arguments not specifically and/or artfully raised in the amended complaint." Id. at 15.

## II. Standard of Review

The VDOC defendants have moved to dismiss Claims 3, 4, 5, 7, and 8 under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[1] They also argue that Claim 6, asserted against Correctional Officer Maggard, should be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c). See 28 U.S.C. § 1915(e)(2)(B)(ii) (granting authority to sua sponte dismiss any claim brought by a plaintiff proceeding in forma pauperis that fails to state a claim on which relief may be granted); 42 U.S.C. § 1997e(c) (granting authority to sua sponte dismiss any claim brought with respect to prison conditions under 42 U.S.C. § 1983 that fails to state a claim upon which relief can be granted).

To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

---

[1] The VDOC defendants have not moved to dismiss the Eighth Amendment claims asserted against Bentley in Claims 1 and 2. See Defs.' Mem. Supp. M. Dismiss, ECF No. 49, at 1.

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### III. Discussion

#### A. Claims under § 1983

Carter filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)).

Carter seeks relief under § 1983 for alleged violations of his Fourteenth Amendment right to due process. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Without a

protected liberty or property interest, a plaintiff "cannot invoke the procedural protections of the Due Process Clause." Id. (emphasis and internal quotation marks omitted).

### 1. Claims 3 and 5

The due process claims asserted in Claims 3 and 5 arise from the disciplinary proceedings that resulted in the imposition of a fine of $15.00 and a fine of $10.00. Carter alleges that he has a liberty interest in the application of Wyoming disciplinary procedures and that the disciplinary fines were imposed and deducted in a manner that violated Wyoming law. See Am. Compl. at 8.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nonetheless, "constitutional procedural due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff, 418 U.S. at 555). "In the carceral context, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shaw v. Foreman, 59 F.4th 121, 128 (4th Cir. 2023) (internal quotation marks and citation omitted).

"While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small fines routinely assessed at disciplinary hearings do not trigger federal due process protections." Riddick v. Kegley, No. 7:20-cv-00562, 2023 WL

2326858, at *5 (W.D. Va. Mar. 2, 2023) (collecting cases); see also Allen v. Hurley, 7:21-cv-00641, 2023 WL 2495803, at *3 (W.D. Va. Mar. 14, 2023) ("Allen's $15 fine was not an 'atypical and significant hardship' that triggered due process protections") (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)); Graham v. Stallard, No. 7:17-cv-00035, 2020 WL 5778790, at *19 (W.D. Va. May 8, 2018) ("The $10 monetary fines imposed here were insufficient to trigger constitutional due process protections.").

Consistent with these decisions, the court concludes that Carter has not plausibly alleged that the imposition of the challenged disciplinary fines rose to the level of an atypical and significant hardship implicating the protections of the Due Process Clause. Moreover, "the Due Process Clause does not federalize state-law procedural requirements." Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996). Thus, the alleged failure to comply with Wyoming law does not provide the basis for a federal due process claim. Id.; see also Ghana v. Pearce, 159 F.3d 1206, 1208–09 (9th Cir. 1998) (holding that a state's Interstate Corrections Compact "is not federal law" and "does not create a liberty interest protected by the Fourteenth Amendment," and that alleged violations of the Compact "cannot be the basis for a section 1983 claim"); Weller v. Dep't of Soc. Servs., 901 F.2d 387, 392 (4th Cir. 1990) ("If Weller is seeking compliance with state law, this is not the proper forum. Even if [the defendant] did violate state law, it is well settled that violations of state law cannot provide the basis for a due process claim."). For these reasons, the due process claims asserted in Claims 3 and 5 must be dismissed.

### 2. Claim 4

In Claim 4, Carter asserts that certain VDOC defendants penalized him with the loss

of good time credits in violation of his right to due process under the Fourteenth Amendment. Although the loss of good time credits may implicate a protected liberty interest, see Lennear, 937 F.3d at 268, Carter's due process claim is not cognizable under § 1983.

The Supreme Court has long held that an inmate "may not challenge the validity of a disciplinary conviction [resulting in the loss of good time credits] through a damages suit under § 1983 . . . 'unless the plaintiff can demonstrate that the conviction . . . already has been invalidated.'" Moskos v. Hardee, 24 F. 4th 289, 295 (4th Cir. 2022) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)); see also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (concluding that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"). Here, as in Moskos and Balisok, Carter's allegations "necessarily imply the invalidity of the punishment imposed," and he does not allege that the disciplinary conviction resulting in the loss of good time credits has been invalidated. Moskos, 24 F.4th at 296 (quoting Balisok, 520 U.S. at 649). Consequently, the due process claim asserted in Claim 4 must be dismissed.[2] Id.

### 3. Claim 6

In Claim 6, Carter alleges that Correctional Officer Maggard, who has not been served with process, violated his right to due process under the Fourteenth Amendment by possessing chewing tobacco during the course of issuing a disciplinary charge. Carter does not

---

[2] If Carter wishes to challenge the loss of good time credits in federal court, "he must use the channel that Congress has provided for such claims." Moskos, 24 F.4th at 296. "That path is through a habeas petition, subject to those statutory requirements that Congress carefully crafted to respect the finality of state judgments." Id.; see also Wall v. Kiser, 21 F.4th 266, 271–72 (4th Cir. 2021) (discussing the available avenues for obtaining review of a decision to revoke a Virginia inmate's credits for good conduct).

plausibly allege that the presence of chewing tobacco imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Consequently, even if tobacco products are prohibited at state correctional facilities, Carter has no viable Fourteenth Amendment claim against Maggard. Id.; see also Bowen v. Taft, 62 F. App'x 117, 118–19 (6th Cir. 2003) (affirming the district court's conclusion that an inmate had no liberty interest in a tobacco-free environment and therefore failed to state a claim for violation of the Fourteenth Amendment). Thus, Claim 6 is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c).[3]

### B. Claims under State Law

#### 1. Negligence

In Claim 7, Carter asserts a claim of negligence against Sgt. Bentley. In particular, Carter alleges that Bentley violated the duty of care owed to him by "leav[ing] Plaintiff in a cell in full restraints knowing[] that the leg shackles [were broken] and causing Plaintiff pain, and that he suffered physical pain and bruises as a result of Bentley's actions. Am. Compl. at 15; see also id. at 5–6 (alleging that Bentley deliberately "left the shackles tight, forcing [Carter] to remain and endure the physical tightness of the restraints").

The VDOC defendants have moved to dismiss the negligence claim based on Virginia's doctrine of sovereign immunity. "Sovereign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." Jean Moreau &

---

[3] Because the claims against Maggard will be dismissed under 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c), Carter's motion to serve Maggard, ECF No. 47, will be denied as moot.

Assocs. v. Health Ctr. Comm'n, 283 Va. 128, 72 S.E.2d 105, 110 (Va. 2012) (internal quotation marks and citation omitted). State correctional officers and other state employees are entitled to the protection of sovereign immunity under certain circumstances. See Messina v. Burden, 228 Va. 301, 321 S.E.2d 657, 663 (Va. 1984) (citing James v. Jane, 221 Va. 43, 282 S.E.2d 864 (Va. 1980)). Notably, however, the doctrine "protects officers only for simple negligence." Cromartie v. Billings, 298 Va. 284, 837 S.E.2d 247, 254 (Va. 2020). "Sovereign immunity does not protect one who 'acts wantonly, or in a culpable or grossly negligent manner.'" Id. (quoting James, 282 S.E.2d at 869).

Liberally construed, Carter's amended complaint alleges that Bentley's conduct involved more than ordinary or simple negligence. See Griffin v. Shively, 227 Va. 317, 315 S.E.2d 210, 212 (Va. 1984) ("We have defined ordinary or simple negligence as the failure to use that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.") (internal quotation marks and citation omitted). At a minimum, Carter's allegations plausibly suggest that Bentley engaged in grossly negligent conduct when he subjected Carter to excessively tight restraints and failed to loosen them after being instructed to do so. See Chapman v. City of Virginia Beach, 252 Va. 186, 475 S.E.2d 798, 801 (Va. 1996) ("Gross negligence has been described as the utter disregard of prudence amounting to complete neglect of the safety of another . . . Deliberate conduct is important evidence on the question of gross negligence.") (internal quotation marks and citations omitted); see also Williams v. Kincaid, 45 F.4th 759, 779 (4th Cir. 2022) (holding that a former inmate stated claims of gross negligence resulting from an aggressive body search that caused pain and bruising). Because Carter has alleged more than simple negligence on the

part of Bentley, the doctrine of sovereign immunity does not protect Bentley at this stage of the proceedings. Accordingly, the motion to dismiss will be denied with respect to the claim of negligence asserted in Claim 7.

### 2. Breach of Contract

To the extent that the amended complaint can be construed to assert a claim for breach of the ICC contract between the Commonwealth of Virginia and the State of Wyoming,[4] such claim is barred by the Eleventh Amendment. Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another state." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). This protection also extends to state agencies and instrumentalities, Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), including the VDOC. See Johnson v. McCowan, 549 F. Supp. 3d 469, 475 (W.D. Va. 2021) (dismissing "all claims against the VDOC because it is immune from suit under the Eleventh Amendment"). Because Carter has not pointed to—and the court is unaware of—any waiver or abrogation of the Commonwealth's Eleventh Amendment immunity with respect to actions for breach of contract, any claim for breach of contract must be dismissed without prejudice. See Clark v. New Mexico Dep't of Corr., 58 F. App' x 789, 791 (10th Cir. 2003) (concluding that the states were the real parties in interest to an ICC contract and that any claim for breach of contract was barred by the Eleventh Amendment) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984)); see also Tang v.

---

[4] A copy of the referenced contract between the Commonwealth of Virginia and the State of Wyoming is docketed at ECF No. 29-5.

11

Univ. of Balt., 782 F. App'x 254, 255 (4th Cir. 2019) (noting that "a dismissal based upon Eleventh Amendment immunity would be without prejudice").

### C. Catch-All Claim

Finally, the court agrees with the VDOC defendants that the catch-all claim asserted in Claim 8 fails to give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted). Accordingly, Claim 8 is subject to dismissal.

### IV. Conclusion

For the reasons set forth herein, the motion to dismiss filed by the VDOC defendants, ECF No. 48, is **GRANTED IN PART AND DENIED IN PART**, and the claims against Correctional Officer Maggard are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C.§ 1997e(c). The case will proceed solely on the claims asserted against Sgt. Bentley in Claims 1, 2, and 7. In light of the court's rulings, Carter's motion to serve Maggard is **DENIED** without prejudice as moot.

An appropriate order will be entered.

Entered: June 6, 2023

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.06.06 18:18:34 -04'00'

Michael F. Urbanski
Chief United States District Judge